### TURKEN *v.* OLSHANSKI.

PARTNERSHIP—ACCOUNTING.

In a suit for the dissolution of a partnership and an accounting, the finding of the court below that defendant, who had withdrawn from participation in the partnership business, was entitled to one-third of all the profits theretofore made, including any increase in the value of real estate purchased on contract, and was chargeable with one-third of all losses, and ordering a reference to ascertain the same, *held*, fair and equitable.

Appeal from Wayne; Richter (Theodore J.), J. Submitted January 4, 1927. (Docket No. 7.) Decided April 1, 1927.

Bill by Shaley Turken and another against Joseph Olshanski for the dissolution of a partnership, and for an accounting. Defendant filed a cross-bill for affirmative relief. From the decree rendered, all parties appeal. Affirmed.

Partnership, 30 Cyc. p. 737.

*William Henry Gallagher (Edward J. Fallon,* of counsel), for plaintiffs.

*Baubie & Baubie,* for defendant.

SHARPE, C. J.    On February 24, 1919, the plaintiffs and defendant and Sam Manishewitz and Samuel Millman entered into a written agreement to associate themselves together as copartners under the firm name of the "Liberty Coal and Coke Company" in the business of operating a coal yard in the city of Detroit. It was stated in the agreement that each of the parties had contributed $1,000 to be used in the business. Prior thereto, and on January 31, 1919, in anticipation of such agreement, the plaintiff Jack Turken and the defendant entered into a contract to purchase 7 lots in the Mt. Elliott Heights subdivision, in said city, from Marcel Dusza, for the sum of $15,000, of which $2,000 was paid in cash, $1,000 to be paid on May 1, 1919, and the balance in quarterly installments of $200 or more, the entire amount to be paid within 10 years.    A one-fifth interest in this contract was transferred to each of the other partners at the time the partnership agreement was executed.    It appears that all of the partners devoted their time to the improvement of these lots and starting the business.    It did not prove successful.    It may be here stated that while the agreement recited a contribution of $1,000 on the part of each of the parties, it is conceded that Manishewitz contributed $3,500, Millman $2,000, and the plaintiffs $2,000.    Defendant did not contribute anything.

At the end of six months, Manishewitz voluntarily withdrew, and two months later Millman withdrew. Each of them received the amount he had contributed. More capital was needed.    The plaintiffs made several loans from friends, securing them in part on property owned by them.    The year 1921 was not a prosperous

one in the coal business.     At times the company was
compelled to purchase from other retailers in order to
supply their customers.     The payments on the land
contract were in arrears, and proceedings were taken
by the vendor to forfeit it and obtain restitution of the
premises.     A bill for leave to redeem was filed, and
on July 13, 1922, a consent decree was entered, rein-
stating the contract.

The defendant had always been employed in the yard.
He had had nothing to do with the office work.     In
May, 1922, he left, and engaged in other employment.
He had been drawing $25 per week during the greater
part of the time.     The reason for his leaving is in
dispute.     Plaintiffs soon after sought to secure from
him an assignment of his interest in the land contract,
but he refused to execute it.     They thereupon filed the
bill of complaint herein, alleging the withdrawal of
defendant, praying for a dissolution of the partner-
ship (the name of which had been changed to Turken
Bros. Coke and Coal Company), and for an account-
ing.     They also asked that defendant be required to
quitclaim to them his interest in the land described in
the land contract above referred to.     The defendant
answered, and by way of cross-bill alleged that certain
other real estate had been purchased with moneys of
the company in the name of one of the plaintiffs, and
that it then had large assets over its liabilities, and
prayed that an accounting be had, the property sold,
the firm dissolved, and that he be decreed to be the
owner of a one-third interest in its assets.

After proofs were taken, the trial court found that
defendant had voluntarily withdrawn from participa-
tion in the partnership business in May, 1922.     He
decreed that defendant was entitled to one-third of all
the profits theretofore made, including any increase in
the value of the real estate, and was chargeable with
one-third of all the losses, and ordered a reference to

ascertain the same, after which a supplemental decree would be made. From this decree both parties appeal.

We are impressed that the decree entered is fair and equitable. The claim of defendant that he left because he was illtreated by plaintiffs is not supported by the proofs. It is apparent that he quit the business of the firm because it was not profitable and he believed he could make more money at other work. Joseph Richman, who had a desk in the company's office, testified:

"I asked him the reason he left the business and he answered, what were you staying for, and I could not make a living he said, and when I was single I did not care, but now I am married it is not enough now, I can make money in the junk wagon, in one day as much as I could make in a week."

The defendant is not entitled to a decree of dissolution and a sale of the partnership assets. The partnership agreement provided that in the event of the retirement of a partner he—

"shall be entitled to all moneys that he may have contributed to said copartnership and shall be entitled to one-fifth of all profits and increase or such equal part as there are partners in said copartnership."

This the decree secured to defendant.

Plaintiffs insist that it is manifest that no profits had been made, and urge on their appeal that an accounting is unnecessary. We are unable to so find.

The decree is affirmed, without costs to either party, and the cause remanded for further proceedings pursuant thereto.

SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred. BIRD, J., did not sit.